🔌 JS 44 (Rev. 12/07) (CAND Rev 1/10)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| STARTEK INVEST LIMITED AND SOUTH PORT STUDIOS, LLC | TELESOFTSERVICE PE D/B/A BUBBLER MEDIA and DOES 1-20 |

| (b) County of Residence of First Listed Plaintiff | County of Residence of First Listed Defendant |
|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | (IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE<br>LAND INVOLVED. |

| (c) Attorney's (Firm Name, Address, and Telephone Number) | Attorneys (If Known) |
|---|---|
| Shannon Gallagher, Esq.   State Bar No. 214446<br>2443 Fillmore Street #131<br>San Francisco, CA 94115<br>415-225-7571 | Dmitri Dubogaev, Esq.<br>901 North Pitt Street, Suite 325<br>Alexandria, VA 22314 |

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                     and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury— Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☒ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt.Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities – Employment<br>☐ 446 Amer. w/Disabilities – Other<br>☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 another district (specify)

Transferred from
☐ 6 Multidistrict Litigation

Appeal to District
☐ 7 Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ $100,000+

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND       ☐ SAN JOSE       ☐ EUREKA

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 11-17-11 | |



1 | Shannon Gallagher, Esq.
Law Offices of Shannon Gallagher
2 | 2443 Fillmore Street #131
San Francisco, CA 94115
3 | (415) 225-7571

4 | UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
5

6 | Startek Invest Limited and South Port
7 | Studios, LLC                           )
                                          ) **CV** } **11**        **5665**
8                                          )  Case No.:
        Plaintiffs,                        )
9                                          )
10 |      vs.                              )  COMPLAINT FOR DAMAGES
   | TelesoftService  PE d/b/a Bubbler Media )
11 |                                        )
   | and Does 1-20                          )
12 |                                        )
                                          )
13 |       Defendants.                     )

14

15 |                    COMPLAINT FOR DAMAGES

16 |      1.     This is an action by Startek Invest Limited and South Port Studios, LLC to

17 | recover damages arising from the breach of contract and infringement of copyright by

18 | TelesoftService PE d/b/a Bubbler Media and Does 1-20, whose names have not yet been

19 | determined, and to enjoin the Defendants from future infringement and from causing further

20 | harm to Plaintiffs.

21 |                          THE PARTIES

22 |      2.     South Port Studios, LLC ("South Port") is a Russian corporation with its principal

23 | place of business in Moscow, Russia.  Among other things, South Port creates, produces,

24 | markets and distributes entertainment products, including video games for online and mobile

25 | platforms through its gaming division, Game Garden.

26 |      3.     Startek Invest Limited ("Startek") is a Cyprus corporation with its principal place

27 | of business in Limassol, Cyprus.  Startek holds the exclusive license to South Port's video game

28 | product, Fairy Farm, a product that runs on the iOS operating system used on Apple, Inc.'s

COMPLAINT FOR DAMAGES - 1

iPhone, iPod, and iPad devices. Startek distributes Fairy Farm through Apple, Inc.'s AppStore, whose principal place of business is in San Jose, California.

4.    TelesoftService PE d/b/a Bubbler Media ("Bubbler Media") is a private enterprise located in Belarus that provides computer programming services for hire and, on information and belief, may create video games of its own. On information and belief, Aleksandr Shatrov ("Shatrov") is one of the owners of TelesoftService PE.

5.    The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as Does 1-20 are unknown to Plaintiffs, and they are therefore sued by Plaintiffs by such fictitious names (the "Doe Defendants"). Plaintiffs will seek leave of the Court to amend this Complaint to state the true names and capacities when ascertained.

## JURISDICTION

6.    This Court has subject matter jurisdiction over Plaintiffs' claim for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101 et seq., and 28 U.S.C. §§ 1331 and 1338(a).

7.    This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

8.    This Court has personal jurisdiction over the Defendants, and each of them, because they have committed, or caused others to commit on their behalves, unlawful and tortious acts both within and outside of the State of California causing Plaintiffs injury in California. Plaintiffs' claims arise, in part, from the conduct that gives rise to personal jurisdiction over Defendants.

## INTRADISTRICT ASSIGNMENT

9.    Because this case is based in copyright, it may be assigned to any of the divisions of the District Court for the Northern District of California.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENUE

10.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

BACKGROUND

11.     In April of 2010, employees in South Port's Game Garden division conceived of an idea for a video game in which players may relax and evoke their imaginations by building their own beautiful, meditative gardens. Play is accompanied by colorful and fanciful graphics and audio designed to heighten a user's experience.

12.     Over the ensuing weeks and months, the idea developed into a new product to be developed by Game Garden with the target distribution being Russian social media websites including Moy Mir, owned by Mail.ru, LLC. Several South Port employees were assigned various tasks related to the project, including development of the game concept, creation of art and graphics, and deployment of marketing strategy.

13.     The name for the product, Volshebnaya Ferma, ("VF") was agreed upon and South Port's talent and resources were committed to its development.

14.     In June 2010, Game Garden decided to contact Bubbler Media to inquire about the company providing some of the requisite code for VF. Specifically, Yuriy Pomortsev and Egor Grishenko of South Port spoke with Shatrov about providing code to enable the game to run on social media platforms.

15.     In July of 2010, South Port's project information and then-current development update was provided to Shatrov who committed that Bubbler Media would provide the requisite code for VF.

16.     As is often the case, rather than pay Bubbler Media for its services, South Port agreed to share profits from the sale of VF on Russian social media websites as compensation for the provided code.

17.     From the outset, and continuing over the course of the ensuing several months, numerous conflicts arose in terms of the expectations and business styles of the two companies.

18. By February of 2011, the parties were discussing parting ways on account of these difficulties. While South Port's commitment of employee time and money continued, by that time, Bubbler Media by and large had ceased working on the project.

19. In February of 2011, Game Garden realized that its planned functionality for the product was not possible with the server code provided by Bubbler Media. Wanting to incorporate new functionality into the video game, and seeking a greater solution for its business, Game Garden's project managers realized the entire server-side code provided by Bubbler Media would need to be replaced. Game Garden discussed with Bubbler Media the limitations of the Bubbler Media code and, while not admitting to the problems inherent in its code, Shatrov agreed that to achieve South Port's desired functionality, Game Garden would write all new server code and would do so at Game Garden's own expense.

20. Based on these facts, Game Garden decided to undertake the expense and write on its own all new code for the server-side of the video game. Over the following months, Game Garden wrote all new server code and, thus, a new server, with an entirely different architecture and in different code languages from that used by Bubbler Media. In addition, extensive portions of the client-side code needed to be and were re-written by Game Garden's employees in order for the video game to operate more smoothly.

21. By summer, given the breakdown of the relationship, the companies concluded decisively it was best to part ways.

22. Negotiations regarding the severing of the relationship took place in July and August of 2011. Central to these negotiations were the questions of costs borne by each company up to that that point in time, and the anticipated use of the project post-settlement.

23. It was agreed upon that South Port would pay Bubbler Media in exchange for a release of any claims to the project. Two prices were discussed by the parties: one price for South Port's continued use of the project in connection with Russian social media websites only, and a second higher price for South Port's use for any platform, including the iOS operating system. As part of these negotiations, Shatrov specifically inquired into South Port's intentions

1    regarding creating an iOS version of the game, as well as its intention to sell the game "in Asia
2    or in the West."

3        24.    Ultimately, South Port requested a release of Bubbler Media's claims to any of
4    the material related to the Game Garden project and paid Bubbler Media for South Port's
5    exclusive use of all material worldwide.

6        25.    Dmitri Redlich, President of South Port, and Shatrov entered a settlement
7    agreement ("The Settlement Agreement") on August 18, 2011, that reflected the prior
8    negotiations of the parties and allowed for South Port's use of the project without limitation. A
9    true and correct copy of the Settlement Agreement, signed by Shatrov, is attached hereto as
10   Exhibit A. A certified copy of an English translation of the Settlement Agreement is attached
11   hereto as Exhibit B.

12       26.    In fulfillment of its obligations under the Settlement Agreement, South Port
13   timely paid to Bubbler Media $40,000.

14       27.    After terminating the relationship with Bubbler Media, Game Garden continued
15   with its business plans, including the continued development of the iOS product, which had
16   commenced in March of 2011.

17       28.    On December 17, 2010, VF was released on the Russian social media website
18   Moy Mir.

19       29.    Based on its market analysis and strategy, South Port also decided to tailor VF so
20   it could be marketed in additional social media markets in other countries, and committed
21   resources to the development of the same.

22       30.    In August of 2011, Game Garden programmers completed creating an i0S
23   compatible video game that would run on Apple, Inc.'s iPhone, iPod, and iPad products.  While
24   the graphics, audio and art for the iOS product are virtually identical to those in the product for
25   social media networks, in order to operate in the iOS environment, the code from the VF
26   product—by then largely written by South Port's employees—was created from scratch in an
27   entirely different programming language.

28

31.    South Port studios entered an exclusive license agreement with Startek for the iOS video game, with the iOS product to be marketed and distributed by Startek, under the Anglicized name Fairy Farm.

32.    Startek began distributing Fairy Farm through Apple Inc.'s App Store on August 25, 2011.

33.    On September 23, 2011, South Port received notice from Bubbler Media's counsel that Bubbler Media had reported a claim of copyright infringement under the Digital Millennium Copyright Act to Apple, Inc. and the App Store. In that letter, and others since, Bubbler Media disavows the Settlement Agreement without reason and demands an accounting of profits related to the Fairy Farm (iOS) product.

34.    South Port then received a Notice from the App Store that the Fairy Farm application, App No. 15648, would be removed from the App Store barring a satisfactory substantive response regarding Bubbler Media's claim. South Port also received a notice from Apple regarding the alleged infringement and was required to respond to that as well.

35.    Startek responded to Apple, Inc. and the App Store and, for now, the Fairy Farm product is still available through the App Store.

36.    Startek also wrote to counsel for Bubbler Media and provided ample support that Fairy Farm does not infringe any of the code in VF. The programming code in Fairy Farm is an independent creation from VF and, in order to run on the iOS platform, is written in different programming languages with no overlap between the code of the two. As such, the code in Fairy Farm is not derived at all from VF.

37.    Startek further clarified that South Port was the sole author of VF and Fairy Farm, or as Bubbler Media calls the iOS version of the video game, Magic Farm. South Port created or commissioned from independent contractors—not Bubbler Media—all of the game design, all of the art, all of the animation, all of the audio files and interplay, and all of the marketing materials for both products.

38.    Finally, Startek provided a copy of the Settlement Agreement, signed by Shatrov, in which Shatrov "Pledge[s] not to file claim to the right to use the project: 'Social Game

1   Volshebnaya Ferma' (program code, graphics materials, and any other materials related to the

2   project) on the condition of receipt of payment of US \$40,000 from Dmitri Fedorovich

3   Redlich." Proof that the U.S. \$40,000.00 was paid was also provided.

4       39.     Despite these facts, Bubbler Media has persisted in its claims of copyright

5   infringement.

6       40.     On September 22, 2011, Bubbler Media registered with the United States

7   Copyright Office a claim of copyright for "Magic Farm," described as a "computer program."

8   *See* Exhibit C attached hereto.

9       41.     In presenting its claim to the Copyright Office, Bubbler Media asserted it was the

10  sole author of "Magic Farm," a "computer program" first published in 2011.

11      42.     Magic Farm is a trademark owned by South Port and is another translation of

12  Volshebnaya Ferma.

13      43.     Prior to commencing this action, South Port filed with the United States

14  Copyright Office for copyright protection of the video games VF and Fairy Farm and all related

15  copyrightable materials.

16                              FIRST CAUSE OF ACTION:

17                  COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501

18      44.     Plaintiffs incorporate by reference as set forth in full herein the allegations

19  contained in paragraphs 1-43 above.

20      45.     Plaintiff South Port is the author, creator and owner of VF and Fairy Farm.

21  Startek is the exclusive licensee of Fairy Farm, South Port's iOS product.

22      46.     For each of the works at issue in this matter, South Port has applied for a

23  registration certificate with the United States Copyright Office.

24      47.     South Port is and always was the sole author of VF and FF. Bubbler Media's

25  provision of limited copyrightable material in connection with VF does not change that as all of

26  the authority and creative control of the authorship, including the decisions to eliminate much of

27  the material provided by Bubbler Media, was always vested in South Port.

28

COMPLAINT FOR DAMAGES - 7

48.    Shatrov, who signed the Settlement Agreement, was and is a duly authorized agent of Bubbler Media.

49.    Bubbler Media released any and all claims to any and all copyrightable material in connection with VF, effectively transferring any rights it had to South Port, in accordance with the Settlement Agreement.

50.    Plaintiffs timely performed all of their obligations in connection with the Settlement Agreement.

51.    Bubbler Media's registration of the "Magic Farm" "computer program" with the United States Copyright Office is not evidence of copyright validity as extensive evidence rebuts the presumption of validigy:  Bubbler Media's registration states the wrong date of creation as VF was first published in 2010, not 2011; fails to state South Port's authorship of all of the game design, art, animation, and audio files and interplay; ignores the valid transfer of any rights Bubbler Media held in the code to VF; and infringes South Port's trademark rights in the term Magic Farm.  In addition, to the extent Bubbler Media's copyright registration uses or includes any copyrightable material authored by South Port, the registration itself violates South Port's rights.

52.    To the extent that Bubbler Media's deposit with the Copyright Office only includes code created by Bubbler Media, the registration is still in violation of the transfer of copyright from Bubbler Media to South Port, which expressly states no "claim" will be made.

53.    The transfer of rights incuded in the Settlement Agreement is clear, definite and complete in its own terms and is signed by Shatrov, Bubbler Media's co-owner and duly authorized agent.  The transfer was executed contemporaneously with the parties' negotiations and agreement and is a product of those negotiations.

54.    The transfer of rights from Bubbler Media to South Port is valid and binding, and even without such a transfer, Bubbler Media's actions are improper as it never was an author of VF, and certainly not of FF, a product completely devoid of any material created by Bubbler Media.

55.     Defendants have willfully infringed Plaintiffs' rights in its creative works by registering a copyright related to the same with the United States Copyright Office and by holding themselves out as the owner of Fairy Farm to Apple, Inc. and the App Store.

56.     Defendants knew the infringed works belong to Plaintiffs and knew their actions constituted copyright infringement.

57.     Defendants conduct is willful within the meaning of the Copyright Act.

58.     As a result of their wrongful conduct, Defendants are liable to Plaintiffs for copyright infringement. Plaintiffs have suffered, and will continue to suffer, substantial harm, including but not limited to damage to their business reputations and goodwill.

59.     Plaintiffs are entitled to damages as a result of Defendants' infringement.

## SECOND CAUSE OF ACTION
## BREACH OF CONTRACT

60.     Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-59 above.

61.     Defendants have breached the Settlement Agreement by asserting claims of rights to any of the materials of VF and/or Fairy Farm.

62.     At the time the Settlement Agreement was entered, Shatrov understood and agreed that South Port would continue in its use of the materials related to VF and would continue to do so in any and all platforms worldwide.

63.     South Port is entitled, by way of the transfer of rights, to employ all of the rights vested in a copyright holder, including the right to sell copies and the right to create derivative works, and the right to transfer any and all rights to Startek.

64.     The Settlement Agreement is a duly agreed upon contract between the parties and reflects a meeting of the minds of the parties.

65.     South Port timely and fully performed its obligations under the Agreement, including the payment of U.S. $40,000.00 to Bubbler Media.

66.     Defendants' breach of the Settlement Agreement has caused, and continues to

cause, Plaintiffs harm, including damage to its business reputation and relationships with Apple,

Inc. and the App Store, and the risk of the removal of Fairy Farm from the App Store website.

The damage to Plaintiffs includes the loss of future revenue and value of its copyrighted

materials.

THIRD CAUSE OF ACTION

INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE

67.     Plaintiffs incorporate by reference as set forth in full herein the allegations

contained in paragraphs 1-66 above.

68. Defendants knew of Plaintiffs' business relationships with Apple, Inc. and the App Store,

as evidenced by the Notice provided to the App Store and Apple of alleged copyright

infringement under the Digital Millennium Copyright Act.

69. Defendants knowingly and wrongfully acted to disrupt Plaintiffs' business, profits, and

relationship with Apple, Inc. and the App Store by seeking to have the Fairy Farm application

removed from the App Store's website.

70.     Through Bubbler Media's wrongful actions regarding the iOS product sold

through the App Store, Plaintiffs were actually disrupted in that neither South Port nor Startek

was able to enter into contracts with other websites or distributors interested in their products out

of concerns regarding Bubbler Media's claims of copyright infringement.

71.     Resultantly, Plaintiffs lost significant prospective business and suffered harm to

their business reputations and good will, both in terms of the fraudulent claims of copyright

infringement filed with Apple, Inc. and the App Store, and because Plaintiffs were either not

being able to enter agreements, or were forced to delay entering agreements for the sale and

distribution of their products.

72.     Plaintiffs were damaged by Defendants actions in terms of lost income as well as

harm to the development and growth of their businesses and business good will as they have had

to inform certain prospective distributors of Bubbler Media's allegations.

1

2         WHEREFORE, Plaintiffs pray for judgment as follows:

3      1.  General damages according to proof;

4      2.  Special damages according to proof;

5      3.  Punitive damages;

6      4.  Attorney's fees and cost;

7      5.  Plaintiff reserves the right to seek other relief; and

8      6.  Such other relief as the Court deems proper.

9

10 Dated: November 17, 2011

11

12                                       Shannon Gallagher, Esq.

                                      The Law Offices of Shannon Gallagher

13                                       2443 Fillmore Street #131

                                      San Francisco, CA 94115

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>EXHIBIT A</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Расписка N' 110-818-1 от 18 августа 2011 г. по проекту "Волшебная ферма"

Я, Шапров Александр Евгеньевич, паспорт 45 04 353254, выдан 05.11.2002 ПС № 2 ОВД Басманного р-на, г. Москва 772-117 проживающий по адресу г. Москва Тамбовый пр. 1-56

Обязуюсь не предъявлять претензий на право эксплуатации проекта : "Социальная игра Волшебная ферма" (программный код, графический материал, иное обращение с проектом (материалы) при условии получения от Редлиха Дмитрия Федоровича 40,000 долларов США :

— 20,000 в августе 2011
— 10,000 в сентябре 2011
— 10,000 в октябре 2011.

18 августа 2011 г.

Шапров А.Е.

**<u>EXHIBIT B</u>**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



WWW.BTSGLOBAL.COM

T R A N S L A T I O N   S E R V I C E S

Toll Free: 1 (800) 601-1121 • Tel: (415) 668-1121 • Fax: (415) 668-5479 • 6254 Geary Blvd./27th Ave., San Francisco CA 94121

*Translated from the Russian language*

Receipt No. 110-818-1 dated August 18, 2011 regarding the project ""Volshebnaya Ferma"*
I, Aleksandr Yevgenyevich Shatrov, passport No. REDACTED , issued on 11.05.2002, PS No. 2,
Department of Internal Affairs, Bassmanniy Region, Moscow, 772-117, residing at address: 1-56
Tankoviy Ave., Moscow
Pledge not to file claim to the right to use the project: "Social Game Volshebnaya Ferma "
(program code, graphic materials, and any other materials related to the project) on the condition
of receipt of payment of US $40,000 from Dmitri Fedorovich Redlikh.

- US $20,000 in August, 2011
- US $10,000 in September, 2011
- US $10,000 in October, 2011

Dated August 18, 2011.

[signature]

A. Ye. Shatrov

*\*Translator's note:*
*The name of the project " Волшебная Ферма " has been transliterated and used in the text as*
*"Volshebnaya Ferma" instead of general translation "Magic Farm".*

## CERTIFICATION OF TRANSLATOR'S COMPETENCE

BTS Translation Services (ATA # 242632) hereby declares that to the best of its knowledge and
belief the attached document has been carefully and accurately translated from Russian into
English by a professional translator, who is conversant in both the Russian and English
languages, and that the same is a true and complete translation on 1 page.

By: _____
*Ella Budovskaya , Project Manager*
*November 11, 2011*

1

**<u>EXHIBIT C</u>**

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

```
Type of Work:          Text

Registration Number / Date:
                       TXu001766479 / 2011-09-22

Application Title: Magic Farm.

Title:                 Magic Farm.

Description:           Electronic file (eService)

Copyright Claimant:
                       Private enterprise TelesoftService.

Date of Creation:  2011

Authorship on Application:
                       Private enterprise TelesoftService, employer for hire;
                         Domicile: Belarus; Citizenship: Belarus. Authorship:
                         computer program.

Rights and Permissions:
                       Dmitri Dubograev, Int'l Legal Counsels PC, 901 N. Pitt
                         Street, Suite 325, Alexandria, VA, 22314, United States,
                         (202) 835-0966, (703) 739-9111, info@legal-counsels.com

Names:                 Private enterprise TelesoftService

==============================================================================
```

11/17/2011 11:01 PM