Shannon Gallagher, Esq. (214446)
2443 Fillmore Street #131
San Francisco, CA 94115
(415) 225-7571

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Startek Invest Limited and South Port Studios, LLC<br><br>               Plaintiffs,<br><br>    vs.<br><br>TelesoftService  PE d/b/a Bubbler Media and a/k/a Tectus Media; Synesis, LLC; Ambar Services Limited, and Does 1-20,<br><br>               Defendants. | Case No.:  CV 11 5665<br><br>FIRST AMENDED COMPLAINT<br><br>Judge:     Hon. Charles R. Breyer<br>Date:      April 27, 2012<br>Time:     10:00 a.m.<br>Courtroom: 6 (17th Floor) |

## FIRST AMENDED COMPLAINT

1.     This is an action by Startek Invest Limited and South Port Studios, LLC to recover damages arising from the infringement of copyright and related claims by TelesoftService PE d/b/a Bubbler Media and Does 1-20, whose names have not yet been determined, and to enjoin the Defendants from future infringement and from causing further harm to Plaintiffs.

## THE PARTIES

2.     South Port Studios, LLC ("South Port") is a Russian corporation, with its principal place of business in Moscow, Russia.  Among other things, South Port creates, produces, markets and distributes entertainment products, including video games for various online and mobile user platforms through its gaming division, Game Garden.  South Port's

games are popular on several Russian social-media websites, with over 5 million users registered to play on at least one Russian social-media website.

3.     Plaintiff Startek Invest Limited, is a Cyprus corporation, with its principal place of business in Limassol, Cyprus.  Startek distributes South Port's products, including the Game Fairy Farm through Apple, Inc's App Store.

4.     TelesoftService PE d/b/a Bubbler Media and a/k/a Tectus Media ("Bubbler Media") is a private enterprise registered in Minsk, Belarus that provides computer programming services for hire and, on information and belief, create video games of its own. According to records produced by Defendants, as of April 2012, TelesoftService, PE is Tectus Media, registered in Minsk, Balarus.

5.     Defendant Synesis LLC is a limited liability company located in Russian and Belarus, with its affiliated companies including "Synesis in Russia and Belarus (also known as Belorussia), Telesoft Service in Belarus, Ambar Services Limited in EU. Trademark Bubbler Media is used by the iPhone game development subsidiary."  FAC Ex. B.  Synesis is the named copyright holder of at least one game developed by Bubbler Media and sold on the Apple App Store.  FAC Group Ex. D.

6.     Defendant Ambar Services Limited is a Cyprus entity and is stated as the seller of at least three games created by Bubbler Media on the Apple App Store.  FAC Group Ex. D.

7.     The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants sued herein as Does 1-20 are unknown to Plaintiffs, and they are therefore sued by Plaintiffs by such fictitious names (the "Doe Defendants").  Plaintiffs will seek leave of the Court to amend this Complaint to state the true names and capacities when ascertained.

## JURISDICTION

8.     This Court has subject matter jurisdiction over Plaintiffs' claims for copyright infringement and related claims pursuant to 17 U.S.C. §§ 101 et seq., and 28 U.S.C. §§ 1331 and 1338(a).

9.     This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because those claims are so related to Plaintiffs' claims under Federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

10.     This Court has personal jurisdiction over the Defendants, and each of them, because they have committed, have caused others to commit on their behalves, or have benefitted from unlawful and tortious acts both within and outside of the State of California causing Plaintiffs injury in California.  Plaintiffs' claims arise, in part, from the conduct that gives rise to personal jurisdiction over Defendants, including through Defendants' allegations to Cupertino-based Apple, Inc. and the App Store.

11.     In addition, Defendants' activities within the state are substantial and have continued for at least several years.

12.     Defendant Synesis's clients include "tier one companies from different industries and countries including UK, USA, Israel, Taiwan and Russia," and its website, contact details appear, including an American flag icon with the phone number "+1 (646) 536-7123."  FAC Ex. B.

13.     On information and belief, based on the current "Contacts" page www.bubblermedia.com/contacts, an American flag icon appears next to "Sales office USA, 20153 Santa Maria Avenue 16 Castro Valley, CA 94546."   FAC Ex. C. page on Bubbler

Media's website, the same +1 646 536-7123 phone number appears. *See, e.g.,* FAC Exs. A & C. In addition, the domain name "bubblermedia.com," registered since July 30, 2008, lists as contact information "Alexander Shatrov Alex Shatrov 7172 Regional St #350 Dublin CA 94568 US Phone: +1.6504884889."

14.     Defendant Ambar Services Limited, affiliated with both Synesis and TelesoftServices, PE, sell products games that were allegedly developed by Bubbler Media through Cupertino-based Apple, Inc.'s App Store.

<u>INTRADISTRICT ASSIGNMENT</u>

15.     Because this case is based in copyright, it may be assigned to any of the divisions of the District Court for the Northern District of California.

<u>VENUE</u>

16.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400.

<u>BACKGROUND</u>

17.     In April of 2010, employees in South Port's Game Garden division conceived of an idea for a video game in which a player plants and tends to a magical garden (the "Game") for the purpose of distributing it through certain Russian social media websites.

18.     Game Garden named the Game Volshebnaya Ferma, which is referred to as Volshebnaya Ferma as well as the common English translations thereof, "Fairy Farm," and "Magic Farm" both within Game Garden and in the marketplace.

19.     Over the ensuing weeks and months, South Port's resources were committed to its development and the idea developed into a road map for a new product to be distributed through Russian social media websites including Moy Mir, owned by Mail.ru, LLC.  Several South Port

employees were assigned various tasks related to the project, including development of the game concept, creation of art and graphics, and deployment of marketing strategy.

20.     With its own programmers engaged in other projects, at the end of June 2010, Game Garden contacted Alexander Shatrov, an owner of Bubbler Media, to inquire about the company providing some of the requisite computer program code for VF.  Specifically, Yuriy Pomortsev and Egor Grishenko of South Port spoke with Shatrov about providing code to enable the game to run on social media platforms.

21.     Bubbler Media holds itself out as a "developer and publisher of software and games for iPhone," who offers a "range of services related to development, promotion and distribution of products."    Specifically, Alexander Shatrov held himself out to Game Garden as an owner of Bubbler Media and asserted Bubbler Media had the requisite expertise to create code for social-media platforms.

22.     Specifically, Alexander Shatrov held himself out to Game Garden as an owner of Bubbler Media and asserted Bubbler Media had the requisite expertise to create code for social-media platforms.

23.     In July of 2010, South Port's project development plan was provided to Shatrov, and it was agreed that Bubbler Media would provide would provide the requisite computer code for VF, with Bubbler Media agreeing to provide a flash programmer, technical writer/tester and local project management in Minsk in connection with Game Garden's project.

24.     As is often the case, rather than pay Bubbler Media for its services, South Port agreed to share profits from the sale of VF on Russian social media websites as compensation for the provided code.

25.     On December 17, 2010, South Port released VF on the Russian social media website Moy Mir.

26.     Game Garden was disappointed in the code provided by Bubbler Media and ultimately decided to rewrite all of the server code, a cost it alone bore.

27.     Conflicts in terms of the expectations of the two companies continued to develop.

28.     Despite notable problems with Bubbler Media's code, Plaintiffs inquired whether Bubbler Media was interested in providing code necessary to develop the video game on the Apple-product compatible iOS platform.

29.     On February 23, 2011, Mr. Shatrov responded to Game Garden that "[i]n A. Shatrov's opinion, due to uncertain prospects of the project's success, it is inexpedient to elaborate a version for the iOS platform. The decision on iOS development should be taken additionally, after clarifying the situation with the main platforms (social networks). In A. Shatrov's opinion, Game Gardens company (*sic*) may decide on independent investment in the development of the 'Volshebnaya Ferma' game for the iOS platform at its own expense." **FAC Ex. __**

30.     Based on Bubbler Media's decision not to be involved, Game Garden began developing the program for the iOS platform independently.  Whereas the social-media platforms use code in the computer language Flash, iOS platforms are compatible with C++ and Objective C++ code.  Although programs exist that can inexpensively translate code from one computer language to another, Game Garden decided it was more technically sound to have the new code written from scratch, despite the cost and time involved.

31.     Because of Bubbler Media's failures, Game Garden's expenses rose dramatically, and its plans to develop the project on other platforms were forestalled.

32.     In light of Bubbler Media disavowing the iOS project and on account of certain corporate conflicts, in February of 2011, the parties began discussing parting ways.  While South Port's commitment of employee time and money continued, by that time, Bubbler Media by and large had ceased working on the project.

33.     On March 15, 2011, Shatrov wrote that he was willing to sell to Game Garden the "exclusive rights" to the "Volshebnaya Ferma" project."

34.     Thereafter, Game Garden incurred the expense to recreate the server-side of the program.  In doing this, Game Garden wrote all new server code with an entirely different architecture and in different code languages from that code provided by Bubbler Media. In addition, extensive portions of the client-side code needed to be and were re-written by Game Garden's employees in order for the video game to operate more smoothly.

35.     That summer, the companies sought to finalize the severing of their relationship.

36.     Negotiations took place in July and August of 2011 regarding questions of costs borne by each company that point in time, and the anticipated use of the project post-settlement.

37.     After negotiations the parties entered into a settlement agreement on August 18, 2011 (the "Settlement Agreement").  Drafted by Mr. Shatrov, the Settlement Agreement is reflective of these negotiations, and provides for payment of U.S. $40,000 in exchange for Bubbler Media's agreement not to "file claim to the right to use the project (program code, graphic materials, and any other materials, and any other materials related to the project) on the condition of the receipt of payment of US $40,000…"

38.     In fulfillment of its obligations under the Settlement Agreement, South Port timely paid to Bubbler Media $40,000.

39.     After terminating the relationship with Bubbler Media, Game Garden continued with its business plans, including the continued development of the Game for iOS platforms, work which had commenced in March of 2011.

40.     In August of 2011, Game Garden programmers completed creating an i0S compatible video game that would run on Apple, Inc.'s iPhone, iPod, and iPad, products.  While the graphics, audio and art for the iOS product are virtually identical to those in the product for social media networks, all of those elements were created by Game Garden.

41.     While Bubbler Media did provide code for the social-media platforms, that code cannot function in the iOS environment.  As such, the code was created from scratch in an entirely different programming language by Game Garden.  Accordingly, none of the computer code in the iOS game is derived from Bubbler Media's source code.

42.     In August 2011, South Port transferred by written agreement its rights in the Game to Startek.

43.     Startek began distributing the iOS product under the Anglicized name, Fairy Farm, through Apple Inc.'s App Store on August 25, 2011.

44.     Apple, Inc.'s and the App Store have principal places of business is in Cupertino California.

45.     On September 23, 2011, Plaintiffs received notice from Bubbler Media's counsel that Bubbler Media claims it is the sole author of "Magic Farm," and that it had reported a copyright infringement under the Digital Millennium Copyright Act to Apple, Inc. and the App Store.  In the letter, and other since, Bubbler Media disavows the Settlement Agreement without reason and demands an accounting of profits related to the Fairy Farm product.

46.    Startek then received a Notice from the App Store that the Fairy Farm application, App No. 15648, would be removed from the App Store barring a satisfactory substantive response regarding Bubbler Media's claim.

47.    Startek has continued to correspond and cooperate with Apple, Inc. and the App Store and, for now, the Fairy Farm product is still available through the App Store.

48.    Bubbler Media claims it is the sole author of "Magic Farm."

49.    On September 22, 2011, Bubbler Media registered with the United States Copyright Office a claim of copyright for "Magic Farm," described as a "computer program" first published in 2011.

50.    In connection with its application for copyright registration, the Defendants submitted a digital copy of Plaintiff's social-media verison of the game being played and knowingly provided false copyright management information to the Copyright Office.

51.    South Port was the sole author of VF and Fairy Farm, or as Bubbler Media calls the iOS version of the video game, Magic Farm.  South Port created or commissioned from independent contractors—not Bubbler Media—all of the game design, all of the art, all of the animation, all of the audio files and interplay, and all of the marketing materials for both products.

52.    Fairy Farm and Magic Farm are trademarks owned by Startek and are translations of Volshebnaya Ferma.

53.    Plaintiffs registered with the United States Copyright Office both Volshebnaya Ferma and Fairy Farm, with effective dates of registration being November 23, 2011.

54.    On November 23, 2011, Plaintiffs filed their Complaint pursuant to 17 U.S.C. § 502 for copyright infringement, breach of contract and intentional interference with Plaintiffs' prospective business advantage.

55.    To date, the App Store has been the most successful distributor of the Game.  In addition to the harm to their business reputations caused by Defendant's claims and actions, Plaintiffs are at risk of significant harm should Apple decide to remove the Game from the App Store to avoid a claim of contributory copyright infringement.

FIRST CAUSE OF ACTION:

<u>COPYRIGHT INFRINGEMENT UNDER 17 U.S.C. § 501</u>

56.    Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-55 above.

57.    Plaintiff South Port is the author, creator and owner of VF and Fairy Farm.  By written agreement, Startek has the exclusive right to distribute Fairy Farm through the App Store.

58.    Both Volshebnaya Ferma and Fairy Farm are registered works, with certificates of copyright registration obtained within five years of the first publication of the works.

59.    Shatrov, who signed the Settlement Agreement, was and is a duly authorized agent of Bubbler Media.

60.    Bubbler Media released any and all claims to any copyrightable material it created in connection with VF, effectively transferring any rights it had to South Port, in accordance with the Settlement Agreement.

61.    Plaintiffs fulfilled all of their obligations in connection with the Settlement Agreement.

62.     Bubbler Media's registration of the "Magic Farm" computer program with the United States Copyright Office is not afforded the presumption of copyright validity.  Bubbler Media's registration states the wrong date of creation as VF was first published in 2010, not 2011; fails to state South Port's authorship of game design, the art, the animation, the audio files and interplay; ignores the valid transfer of any rights Bubbler Media held in the code to VF; and infringes South Port's trademark rights in the term Magic Farm.  In addition, because Bubbler Media's copyright registration includes copyrightable material authored by South Port, the registration itself violates Plaintiffs' rights.

63.     Bubbler Media's Magic Farm registration also violates the transfer agreement from Bubbler Media to South Port, which expressly states Bubbler Media will make no "claim" to the game.

64.     The transfer of rights in the Settlement Agreement is clear, definite and complete in its own terms and is signed by Shatrov, Bubbler Media's owner and duly authorized agent. The transfer was executed contemporaneously with the parties' negotiations and agreement and is a product of those negotiations.

65.     The transfer of rights from Bubbler Media to South Port is valid and binding.

66.     Defendants have willfully infringed Plaintiffs' rights in its creative works by registering a copyright related to the same with the United States Copyright Office and by holding themselves out as the owner of Fairy Farm to Apple, Inc. and the App Store.

67.     Defendants knew the infringed works belong to Plaintiffs and knew their actions constituted copyright infringement.

68.     Defendants conduct is willful within the meaning of the Copyright Act.

69.     As a result of their wrongful conduct, Defendants are liable to Plaintiffs for copyright infringement.  Plaintiffs have suffered, and will continue to suffer, substantial harm, including but not limited to damage to their business reputations and goodwill.

70.     Plaintiffs are entitled to damages as a result of Defendants' infringement.

SECOND CAUSE OF ACTION

BREACH OF CONTRACT

71.     Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1-70 above.

72.     Defendants have breached the Settlement Agreement by asserting claims of rights to any of the materials of VF and/or Fairy Farm.

73.     At the time the Settlement Agreement was entered, Shatrov understood and agreed that South Port would continue in its use of the materials related to VF.

74.     South Port is entitled, by way of the transfer of rights, to employ all of the rights vested in a copyright holder, including the right to sell copies and the right to create derivative works.

75.     The Settlement Agreement is a duly agreed upon contract between the parties and reflects a meeting of the minds of the parties.

76.     South Port timely and fully performed its obligations under the Agreement, including the payment of $40,000.00 to Bubbler Media.

77.     Defendants' breach of the Settlement Agreement has caused, and continues to cause, Plaintiffs harm, including damage to its business reputation and relationship with Apple, Inc. and the App Store, and the risk of the removal of Fairy Farm from the App Store.  The

damages to Plaintiffs include the loss of future revenue from the App Store and other distributors and the loss of the value of its copyrighted materials.

THIRD CAUSE OF ACTION

<u>INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE</u>

78.     Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1- 77 above.

79.     Defendants knew of Plaintiffs' business relationships with Apple, Inc. and the App Store, as evidenced by the Notice provided alleging infringement under the Digital Millennium Copyright Act.

80.     Defendants knowingly and wrongfully acted to disrupt Plaintiffs' business, profits, and relationships with Apple, Inc. and the App Store by seeking to have the Fairy Farm application removed from the App Store.

81.     Through Bubbler Media's wrongful actions regarding the iOS product sold through the App Store, Plaintiffs were actually disrupted in that they were not able to enter into contracts with other websites or distributors interested in their products out of concerns regarding Bubbler Media's claims of copyright infringement.

82.     Resultantly, Plaintiffs lost significant prospective business and suffered harm to their reputations and good will, both in terms of the fraudulent claims of copyright infringement filed with Apple, Inc. and the App Store, and because Plaintiffs were either not able to  enter agreements or were forced to delay entering agreements for the sale and distribution of their products.

83.     Plaintiffs were damaged by Defendants actions in terms of lost income as well as harm to the development and growth of their business and business good will as they have had to inform certain prospective distributors of Bubbler Media's allegations.

FOURTH CAUSE OF ACTION

VIOLATION OF 17 U.S.C. 1202

84.     Plaintiffs incorporate by reference as set forth in full herein the allegations contained in paragraphs 1- 83 above.

85.     Defendants knowingly provided false copyright management information in connection with the materials submitted to the United States Copyright Office in seeking registration of the computer program "Magic Farm."

86.     Specifically, Defendants removed the true identity of the author of the game in connection with the application for copyright registration by submitting a video of a player playing Plaintiffs' Volshebnaya Ferma game on a Russian social media site and passing it off as a video of Defendants' product.

87.     Plaintiffs were damaged in that Bubbler Media succeeded in passing off Plaintiffs' work as Bubbler Media's own and, through this deceit, obtained a copyright registration.

88.     Plaintiffs were further damaged in that Bubbler Media used the ill-gotten copyright registration to convince Apple, Inc. and the App Store of its rights in the Fairy Farm product distributed by Startek through the App Store.

WHEREFORE, Plaintiffs pray for judgment as follows:

1.      General damages according to proof;

2.      Special damages according to proof;

3.      Punitive damages;

4.      Attorney's fees and costs;

5.      Plaintiffs reserve the right to seek other relief; and

6.  Such other relief as the Court deems proper.

Dated: April 25, 2012

_____

Shannon Gallagher, Esq. (214446)
The Law Offices of Shannon Gallagher
2443 Fillmore Street #131
San Francisco, CA 94115

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28